IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEREK HOLLOWAY, §
§
            Plaintiff, §
§
v. § CIVIL ACTION NO. H-13-1317
§
ITT EDUCATIONAL SERVICES, §
INC., §
§
            Defendant. §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Derek Holloway, brings this action against defendant, ITT Educational Services, Inc. ("ITT"), for employment discrimination based on disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111, et seq. ("ADA"), the Texas Commission on Human Rights Act ("TCHRA") codified in Chapter 21 of the Texas Labor Code, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Pending before the court are Defendant's Motion for Summary Judgment (Docket Entry No. 18), and Plaintiff's Application to Clerk for Default and Response to Defendant's Motion for Summary Judgment (Docket Entry No. 28) in which plaintiff moves the court to enter default judgment. For the reasons set forth below, plaintiff's motion for entry of default judgment will be denied, ITT's motion for summary judgment will be granted, and this action will be dismissed with prejudice.

## I.  **Plaintiff's Motion for Default Judgment**

Citing Federal Rule of Civil Procedure 55 and the affidavit of Craig Keener, plaintiff moves the court for entry of default judgment.[1]  Plaintiff argues that

> [t]his lawsuit was originally brought in state court under the TCHRA, and was removed by ITT based upon diversity jurisdiction.  Derek Holloway timely filed a First Amended Complaint on September 6, 2013, adding claims under the ADA and the FMLA.  ITT never answered that amended complaint, and is in default. . . .
>
>    . . .
>
>     Pursuant to Fed. R. Civ. P. 55(a), when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
>     Because Derek Holloway's damages are not for a sum certain, after the clerk has entered a default against ITT, Derek Holloway petitions the Court for a default judgment.  Pursuant to Fed. R. Civ. P. 55(b)(2), Derek Holloway requests that the Court conduct a hearing on damages with proper notice to all parties and enter a default judgment against ITT based upon the Court's determination of damages.[2]

Federal Rule of Civil Procedure 55 provides in pertinent part:

> **(a)** **Entering a Default.**  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

_____

[1]Plaintiff's Application to Clerk for Default and Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 28, 2.

[2]Id. at 1-2.

> **(b)   Entering a Default Judgment.**
>
>> **(1)   *By the Clerk*.**  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>>
>> **(2)   *By the Court*.**  In all other cases, the party must apply to the court for a default judgment. . . .

Neither default nor default judgment is appropriate in this action because ITT is not in default and has not failed to otherwise defend the action.

This action was originally filed in the 125th Judicial District Court of Harris County, Texas, on April 5, 2013.  ITT filed Defendant's Original Answer in the state court on May 6, 2013.[3]  On May 7, 2013, ITT removed plaintiff's action to this court.[4]  Pursuant to Rule 81(c)(1), the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."  Moreover, "[a]fter removal, repleading is unnecessary unless the court orders it."  Fed. R. Civ. P. 81(c)(2).  Since ITT answered plaintiff's original petition in state court, ITT did not need to file an amended answer absent a court order.

---

[3]Defendant's Original Answer, Exhibit 2 to Notice of Removal, Docket Entry No. 1-4.

[4]Notice of Removal, Docket Entry No. 1.

On May 10, 2013, the court issued an Order for Initial Pretrial and Scheduling Conference to be held on July 19, 2013 (Docket Entry No. 2). Counsel for ITT participated in the pretrial and scheduling conference held on July 19, 2013 (Docket Entry No. 8). At the scheduling conference the court entered a Docket Control Order, pursuant to which motions to amend pleadings were due by September 6, 2013 (Docket Entry No. 9). On September 6, 2013, plaintiff filed a First Amended Complaint (Docket Entry No. 12), but did not file a motion seeking leave to file an amended complaint. Since plaintiff neither sought nor obtained leave of court to file an amended complaint, ITT was not required to file an amended answer.

Even if plaintiff's first amended complaint were properly filed, default judgment would not be appropriate because ITT has not "failed to . . . otherwise defend" the action. Fed. R. Civ. P. 55(a). The clerk's file shows that on October 21, 2013, the parties filed an Agreed Motion to Amend the Docket Control Order seeking to extend the deadline for mediation (Docket Entry No. 13), which the court granted on October 22, 2013 (Docket Entry No. 14). On November 12, 2013, ITT filed its Designation of Experts (Docket Entry No. 16), and on January 17, 2014, attorneys for both parties filed a Rule 29 Agreement Regarding Discovery Responses pursuant to which the deadline for defendant's responses to plaintiff's discovery requests was extended (Docket Entry No. 17). On

February 24, 2014, ITT filed the pending Motion for Summary Judgment (Docket Entry No. 18); on March 20, 2014, the parties filed a Joint and Agreed Motion to Postpone Deadline for Filing Joint Pretrial Order Pending Ruling on Defendant's Motion for Summary Judgment (Docket Entry No. 27); and on March 25, 2014, ITT filed Defendant's Answer to Plaintiff's First Amended Complaint (Docket Entry No. 31).

Because plaintiff neither moved for nor received the court's permission to file an amended complaint, ITT's failure to file an answer to the amended complaint prior to March 25, 2014, does not constitute a default. Moreover, as the court's review of the clerk's file in this case shows that the clerk has not entered default, and ITT has not failed to defend itself in this action, plaintiff's motion for entry of default judgment will be denied. Since the pending motion for summary judgment and the plaintiff's response thereto both treat Plaintiff's First Amended Complaint (Docket Entry No. 12) as the live complaint, and since ITT has now filed an Answer to Plaintiff's First Amended Complaint (Docket Entry No. 31), the court concludes that Plaintiff's First Amended Complaint is the live complaint.

## II. **Defendant's Motion for Summary Judgment**

ITT argues that it is entitled to summary judgment on plaintiff's ADA and TCHRA claims because plaintiff is unable to show that he was a qualified individual with a disability or that

the legitimate, non-discriminatory reason for which he was discharged was a pretext for disability-based discrimination.  ITT argues that it is entitled to summary judgment on plaintiff's FMLA claim because plaintiff is unable to cite evidence showing that he was eligible to return to work when his FMLA leave expired.[5]

## A.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S. Ct. at 2553-2554 (emphasis in

---

[5]Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 12-18.

original)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Id. (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)).

**B.   Undisputed Facts**

ITT hired plaintiff in July of 2009 to work as an Educational Recruiting Representative at the Houston West Campus.[6]  Plaintiff

---

[6]See Affidavit of Derek Holloway, Exhibit B to Plaintiff's Response, Docket Entry No. 28-2. See also Employee Status Notice, (continued...)

reported to the Director of Recruitment, and his job duties included identifying, interviewing, and facilitating enrollment of prospective students in ITT's programs of study.[7] ITT recruiters receive weekly Representative Plan Goals ("Plan") setting forth the number of (1) phone calls ("dials"), (2) contacts, (3) scheduled tours, (4) conducted tours, (5) applications, and (6) acceptances they are expected to facilitate each week.[8]

Plaintiff received several warnings that his performance fell short of ITT's expectations. Plaintiff received his first "Written Warning" for "Lack of Performance" from his then-supervisor, Corey Lewis, on August 17, 2010. The August 17, 2010, Written Warning states that plaintiff's "application" rate was unacceptable and that his actual rates of scheduling tours, conducting tours, and acceptances fell short of his Plan goals.[9] On April 6, 2011, plaintiff received a "Final Written Warning for Lack of Performance" from his then-supervisor, Mark Walker.[10] The April 6, 2011, Final Written Warning states that plaintiff's "scheduling" and "conducting" rates fell below expectation and that his

---

[6](...continued)
Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 18-1.

[7]Job Description, Exhibit B to Defendant's Motion for Summary Judgment, Docket Entry No. 18-2.

[8]Deposition of Derek Holloway ("Plaintiff's Deposition"), Exhibit C to Defendant's Motion for Summary Judgment, Docket Entry No. 18-3, pp. 89-91.

[9]Id. at 94-96 and Exhibit 4 attached thereto.

[10]Id. at 96-97 and Exhibit 5 attached thereto.

"cancellation" rate was above the department average.[11]   On August 4, 2011, plaintiff received a "Written Warning" for a "Compliance & Ethics Violation" from Cathy Clark, Director of Houston's West Campus.[12]  This warning was based on feedback from a "mystery shopper" who reported that plaintiff had discussed inappropriate topics while giving her a tour of the campus.[13] Plaintiff denied the mystery shopper's allegations, but recalled the counseling session with Clark at which he received a Written Warning for directing a "mystery shopper" to review salaries at websites such as salaries.com.[14]

The current Director of Recruiting at Houston's West Campus, Steven Lee ("Lee"), counseled plaintiff for "Lack of Performance" on four occasions:  October 10, 2011; November 15, 2011; May 15, 2012; and August 16, 2012.[15]  During each counseling session Lee told plaintiff that he needed to increase his activities and efforts at meeting his Plan goals.[16]  On October 2, 2012, Lee sent an e-mail to his superior, Jeff Deaton, requesting permission to

---

[11]<u>Id.</u> at 97.

[12]<u>Id.</u> at 97-99 and Exhibit 6 attached thereto.

[13]<u>Id.</u> at 98.

[14]<u>Id.</u> at 99.

[15]<u>Id.</u> at 104-113 and Exhibits 7-10 attached thereto.

[16]<u>Id.</u> at 105, 107-13.

discharge plaintiff for poor performance.[17]   Deaton instructed Lee to issue a "Final Written Warning" in lieu of discharge because plaintiff's previous "Final Written Warning" had been issued more than twelve months earlier.[18]   On October 5, 2012, Lee issued plaintiff a "Final Written Warning for Lack of Performance."   This Final Written Warning stated that plaintiff had started only four students on a Plan of 15 in March of 2012, eight students on a Plan of 12 in June of 2012, and two students on a Plan of 13 in September of 2012.[19]

While employed by ITT plaintiff received three Performance Planning and Evaluation Summaries ("PP&E") that were prepared by his immediate supervisors on an annual basis:  November 17, 2010; May 24, 2011; and June 5, 2012.  The ratings were on a scale of 1 - 5, with 1 being the best score.[20]   Plaintiff received an overall rating of 4 — "Failed to Meet Expectations" — on the 2010 and 2011 PP&Es, and 3 — "Met Expectations" — on the 2012 PP&E.[21]

---

[17]E-mail from Steven Lee to Jeff Deaton dated October 2, 2012, Exhibit B to Defendant's Reply to Plaintiff's Application for Default and Response to Defendant's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 33-2.  See also Deposition of Ho Steven Lee, Exhibit A to Defendant's Reply, Docket Entry No. 33-1, pp. 54:22-25, 55:1-11, 72:16-25.

[18]Plaintiff's Deposition, Exhibit C to Defendant's Motion for Summary Judgment, Docket Entry No. 18-3, pp. 96-97, 114-16.

[19]Id. at 114 and Exhibit 11 attached thereto.

[20]Exhibit E to Defendant's Motion for Summary Judgment, Docket Entry No. 18-5.

[21]Exhibit D to Defendant's Motion for Summary Judgment, Docket Entry No. 18-4.

After a routine physical in early October of 2012, plaintiff's primary care physician referred him to a urologist.[22]   On October 15, 2012, plaintiff was diagnosed with prostate cancer.[23] On the same day, plaintiff met with Lee and provided him documentation regarding his diagnosis.[24] After his discussion with Lee about his diagnosis, plaintiff contacted The Hartford about completing an application for disability leave, and plaintiff contacted ITT's Human Resources Department to inquire about medical leave.[25]   Plaintiff spoke with Natalie Hay ("Hay"), ITT's then Manager of Benefits, who provided him with FMLA paperwork and submitted his application for approval.[26]   ITT approved plaintiff for a 12-week period of FMLA leave lasting from October 15, 2012, through January 7, 2013.[27]   Hay also coordinated plaintiff's application for short-term disability ("STD") benefits, which The Hartford approved and plaintiff received from October 22, 2012, through March of 2013.[28]   After exhausting his STD benefits, plaintiff applied for and received long-term disability ("LTD")

---

[22]Plaintiff's Deposition, Exhibit C to Defendant's Motion for Summary Judgment, Docket Entry No. 18-3, p. 27.

[23]Id. at 33.

[24]Id.

[25]Id. at 37.

[26]Id. at 39-40.

[27]Id. at 41-42 and Exhibit F attached thereto (FMLA approval documents).

[28]Id. at 44.

benefits from The Hartford, which he was still receiving at the time of his deposition on December 18, 2013, because his physician had not yet released him to return to work.[29]  According to plaintiff his daily exhaustion, inability to maintain an appropriate level of concentration, and frequent need to use the bathroom have made it impossible for him to perform his job as an Educational Recruiting Representative.[30]

ITT receives census data for each of its campuses on a quarterly basis and adjusts staffing in accordance with Resident College Staffing Guidelines prepared by its Operations Department. When quarterly census data requires a reduction of positions within a department, selection of employees for inclusion in a reduction-in-force ("RIF") is based on the most recent PP&E scores. Employees who have been placed on Written Warning in the 12-month period immediately preceding the RIF have an additional five points added to their PP&E scores; employees who have been placed on a Final Written Warning within that period have an additional ten points added to their scores.  Employees with the highest scores are selected for discharge.  When two employees have the same point value, tenure is used as the tie breaker.[31]  The fall 2012 RIF

---

[29]Id. at 45.

[30]Id. at 49-50.

[31]Declaration of Donna Smith, Exhibit H to Defendant's Motion for Summary Judgment, Docket Entry No. 18-8, ¶¶ 3-7.

affected 165 employees at 91 ITT campuses.[32]   The campus where plaintiff worked was required to include three employees from its recruitment department in the fall 2012 RIF.   Plaintiff — who had the highest score of 13 — along with two other recruitment department employees with scores of 8 and 6, as well as one other employee from another department were discharged.[33]   The RIF reduced the number of recruiters at plaintiff's campus from 17 to 14.[34]

### C.   Analysis

    1.   Disability Discrimination Claims Under ADA and TCHRA

ITT argues that it is entitled to summary judgment on plaintiff's ADA and TCHRA claims because plaintiff is unable to show that he was a qualified individual with a disability, or that the legitimate, non-discriminatory reason for which he was discharged, i.e., a nationwide RIF, was a pretext for disability-based discrimination.[35]

    (a)   Applicable Law

Title I of the ADA prohibits discrimination against qualified individuals on the basis of disability and requires employers to

---

[32]Id. ¶ 8.

[33]Id. ¶ 10.

[34]Exhibit C to Defendant's Reply, Docket Entry No. 33, ITT 000721.

[35]Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 13-18.

make reasonable accommodations for otherwise qualified disabled employees. 42 U.S.C. § 12112(a); § 12112(b)(5)(A). The ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability. . ." 42 U.S.C. § 12112(a). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). See Milton v. Texas Department of Criminal Justice, 707 F.3d 570, 573 (5th Cir. 2013). Discrimination under the statute includes the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual, unless accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A).

> The ADA, its implementing regulations, and the EEOC's interpretative guidance make clear that an employer's obligation to provide a 'reasonable accommodation,' when triggered, contemplates changes to an employer's procedures, facilities, or performance requirements that will permit a qualified individual with a disability to perform the essential functions of his or her job.

Burch v. Coca-Cola Co., 119 F.3d 305, 314 (5th Cir. 1997). Under the ADA a reasonable accommodation may include:

> **(A)** making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

-14-

**(B)** job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The Fifth Circuit follows the burden-shifting evidentiary framework articulated by the Supreme Court in <u>McDonnell-Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973), for analyzing employment discrimination claims asserted under the ADA.   See <u>Gowesky v. Singing River Hospital Systems</u>, 321 F.3d 503, 511 (5th Cir. 2003). Plaintiff's initial burden is to establish a prima facie case of discrimination based upon his disability by showing (1) he is disabled, (2) he was qualified for the job, (3) he was subjected to an adverse employment action because of his disability, and (4) he was replaced by or treated less favorably than non-disabled employees. <u>Id.</u>  See also <u>Milton</u>, 707 F.3d at 573 (quoting <u>Daigle v. Liberty Life Ins. Co.</u>, 70 F.3d 394, 396 (5th Cir. 1995)).  If a plaintiff establishes a prima facie case of disability-based discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. <u>Gowesky</u>, 321 F.3d at 511; <u>Daigle</u>, 70 F.3d at 396.

Once the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action at issue, the burden shifts back upon the plaintiff who may prove intentional discrimination by proceeding under one of two alternatives:  the

pretext alternative or the mixed-motives alternative.   See
Pinkerton v. Spellings, 529 F.3d 513, 519 (5th Cir. 2008) (per
curiam) ("Under a plain reading of the statue, and in accord with
the position of other circuits, we conclude that the ADA does not
require 'sole causation.'  The proper causation standard under the
ADA is a 'motivating factor' test.").[36]  See also Rachid v. Jack in
the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (holding that the
"mixed-motives" analysis used in Title VII cases is equally
applicable in cases brought under anti-discrimination statutes such
as the Age Discrimination in Employment Act which — like the ADA —
prohibits discrimination "because of" age instead of employing
Title VII's broader prohibition of discrimination that is a
"motivating factor" for an employment practice).  The pretext
alternative involves "offer[ing] sufficient evidence to create a
genuine [dispute] of material fact that [the] defendant's reason is

_____

[36]Subsequent to Pinkerton, 529 F.3d at 513, the Supreme Court
ruled that the mixed-motives alternative is unavailable in the
similarly-worded discrimination provision in the Age Discrimination
in Employment Act ("ADEA").  See Gross v. FBL Financial Services,
Inc., 129 S. Ct. 2343 (2009).  Gross held that the mixed-motives
argument was unavailable because, among other reasons, the ADEA's
relevant provision prohibits discrimination "because of" age
instead of employing Title VII's broader prohibition of
discrimination that is a "motivating factor" for an employment
practice.  Id. at [174-76].  See also University of Texas Southwest
Medical Center v. Nasser, 133 S. Ct. 2517 (2013) (holding that the
mixed-motive argument is not available in the context of a
Title VII retaliation claim, which must be proved according to
traditional principles of but-for causation).  The court need not
decide whether the mixed-motive analysis is available under the ADA
because, even assuming arguendo that it is, ITT is entitled to
summary judgment.

not true, but is instead a pretext for discrimination." <u>Rachid</u>,
376 F.3d at 312.   Under the mixed-motives alternative, the
plaintiff must offer sufficient evidence to create a genuine
dispute of material fact "that the defendant's reason, while true,
is only one of the reasons for its conduct, and another 'motivating
factor' is the plaintiff's protected characteristic." <u>Id.</u>   <u>See</u>
<u>also</u> <u>Maples v. University of Texas Medical Branch at Galveston</u>, 524
F. App'x 93, 95 (5th Cir. 2013) (applying the "motivating factor"
standard in analyzing motion for summary judgment filed in an ADA
employment discrimination action).   If the employee offers evidence
capable of proving that discrimination was a motivating factor in
the employment decision, the burden shifts to the employer to prove
that it would have taken the same action despite the discriminatory
animus.   <u>Rachid</u>, 376 F.3d at 312.   <u>See also</u> <u>Richardson v.</u>
<u>Monitronics International, Inc.</u>, 434 F.3d 327, 333 (5th Cir. 2005)
(analyzing FMLA retaliation claim under modified <u>McDonnell-Douglas</u>
scheme endorsed by the Fifth Circuit in <u>Rachid</u>, 376 F.3d at 305).
"Although intermediate evidentiary burdens shift back and forth
under this framework, '[t]he ultimate burden of persuading the
trier of fact that the defendant intentionally discriminated
against the plaintiff remains at all times with the plaintiff.'"
<u>Reeves</u>, 120 S. Ct. at 2106 (quoting <u>Texas Department of Community</u>
<u>Affairs v. Burdine</u>, 101 S. Ct. 1089, 1093 (1981)).

Like the ADA, § 21.105 of the Texas Labor Code allows an
employer to be held liable for discrimination because of or on the

basis of a disability that does not impair an individual's ability to reasonably perform a job.   Texas Labor Code § 21.051 (characterizing "an unlawful employment action" and adverse employment action taken by an employer because of an individual's "disability").   See Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003) (TCHRA case stating that "[t]he Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA").   "In discrimination cases that have not been fully tried on the merits, [Texas courts] apply the burden-shifting analysis established by the United States Supreme Court."   Canchola, 121 S.W.3d at 739 (citing, inter alia, Reeves, 120 S. Ct. at 2097, and McDonnell-Douglas, 93 S. Ct. at 1817).   "Given the similarity between the ADA and the TCHRA, Texas courts 'look to analogous federal precedent for guidance when interpreting the Texas Act.'"   Rodriguez v. ConAgra Grocery Products Co., 436 F.3d 468, 473-74 (5th Cir. 2006) (quoting NME Hospitals, Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999)).   Thus, plaintiff's TCHRA claim is subject to the same analysis as is his ADA claim.   Id.

      (b)  Application of the Law to the Undisputed Facts

          **(1)  Plaintiff Fails to Establish a Prima Facie Case by Establishing that He Is a Qualified Individual with a Disability.**

ITT argues that plaintiff's ADA and TCHRA claims are subject to summary judgment because plaintiff was not a qualified individual when he was discharged on October 23, 2012, because he

was unable to perform the essential functions of his job as an
Educational Recruiting Representative.  The parties do not dispute
that when he was discharged plaintiff was being treated for cancer
or that cancer constitutes a disability.  See 29 C.F.R.
§ 1630.2(j)(3)(iii) (including cancer in list of impairments that
will almost always impose a substantial limitation on a major life
activity).  A "'qualified individual' means an individual who, with
or without reasonable accommodation, can perform the essential
functions of the employment position that such individual holds or
desires." 42 U.S.C. § 12111(8).  To avoid summary judgment on the
question of whether he was a qualified individual, plaintiff must
show:  "1) "that he could perform the essential functions of the
job in spite of his disability, or 2) that a reasonable
accommodation of his disability would have enabled him to perform
the essential functions of the job." Turco v. Hoechst Celanese
Corp., 101 F.3d 1090, 1093 (5th Cir. 1996)(per curiam).  See also
Crossley v. CSC Applied Technologies, L.L.C., ___ F. App'x ___,
2014 WL 2119156, *2 (5th Cir. May 22, 2014) (per curiam).

The undisputed evidence establishes that plaintiff's position
of Educational Recruiting Representative required him to identify,
interview, and facilitate enrollment of prospective students in
ITT's programs of study.[37]  Plaintiff testified that the essential
functions of his job required him to make a certain number of phone

---

[37]Job Description, Exhibit B to Defendant's Motion for Summary
Judgment, Docket Entry No. 18-2.

calls every day, schedule prospective applicants to visit the campus where he worked, give presentations to prospective applicants, lead prospective applicants on campus tours, and talk with prospective applicants regarding their financial needs.[38] Plaintiff also testified that his daily exhaustion, inability to maintain an appropriate level of concentration, and frequent need to use the bathroom have made it impossible for him to perform the essential functions of his job as an Educational Recruiting Representative from October 15, 2012, the day he notified his supervisor of his diagnosis and need for treatment, until at least the day of his deposition, December 18, 2013.[39]

Plaintiff argues that he was nevertheless a qualified individual because he testified throughout his deposition that he could do jobs with a reasonable accommodation.[40]  In pertinent part plaintiff testified:

> Q.    Were you able to work from October 12th — excuse me — October 2012 through March of 2013?
>
> A.    Can you repeat that again?
>
> Q.    Yeah.  I'm just curious.  Were you able -- while you were on short-term disability from October 2012 through March of 2013, were you able to work, or was it a situation where you could not work?

---

[38]Plaintiff's Deposition, Exhibit C to Defendant's Motion for Summary Judgment, Docket Entry No. 18-3, pp. 47, 89-91.

[39]Id. at 46-47, 49-50.

[40]Plaintiff's Response, Docket Entry No. 28, p. 14 (citing Plaintiff's Deposition, Docket Entry No. 30, pp. 46 and 51).

MR. KEENER: Objection.   Vague.

You can answer.

A.   If the — if the right position in the right job, I guess I — I probably could have worked.

Q.   What — what position or job do you think you could have worked during that period?

A.   Something other than what I was doing.

Q.   For example, what do you think you could have performed, what job?

A.   I don't know.   I don't have an answer.

Q.   So as you sit here today, you don't know of a job that you could have worked from October 12th — from October 2012 through March of 2013?

A.   No, I don't know.

Q.   You don't know of any; is that correct?

A.   Correct.[41]

Plaintiff also testified:

Q.   Given your prostate cancer and the fact that you have been on — you're on LT — long-term disability benefits, are there any jobs that you can identify right — today, as you sit here, that you can perform?

A.   Probably anything outside sales where it's flexible, allows me time, basically, I guess, to make my own schedule.

Q.   How many hours a week could you work?

A.   Probably like 20.

Q.   And again, is it the concentration and the urination and the — the same issues that would interfere with you working a full-time job?

_____

[41]Plaintiff's Deposition, Docket Entry No. 30, p. 46:1-24.

> A.   Yes, pretty much.[42]

Plaintiff testified further:

> Q.   . . . Are you seeking reinstatement with your job
>      at ITT?
>
> A.   No.
>
> Q.   Is it fair to say you couldn't perform your old
>      job?
>
> A.   I wouldn't want my old job.
>
> Q.   I understand.  But could you perform it even if you
>      wanted it?
>
> A.   Not on a full-time basis, no.[43]

Plaintiff's argument that he was a qualified individual for purposes of the ADA because he could perform jobs with a reasonable accommodation has no merit because plaintiff has failed to present any evidence that he ever requested a reasonable accommodation. See Burch, 119 F.3d at 314.  See also Burden v. Southwestern Bell Telephone Co., L.P., 183 F. App'x 414, 417 (5th Cir. 2006) (citing Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 735-36 (5th Cir. 1999) (noting that an employee must participate in an "interactive process" with the employer to arrive at a suitable accommodation)). Nor has plaintiff presented any evidence of a reasonable accommodation that would have allowed him to perform the essential

---

[42]Id. at 51:6-19.

[43]Id. at 160:14-22.

functions of either his job as an Educational Recruitment Representative or of any other job available at ITT.

> A wrongful termination claim under the ADA is not properly analyzed under a reasonable accommodation theory unless an employer is shown to have terminated a qualified individual with a disability in order to avoid accommodating that employee's impairments at the workplace.

Burch, 119 F.3d at 314.  An employee who fails either to request a reasonable accommodation or to identify an accommodation that would have allowed him to fulfill the essential requirements of his own job or of a job that was otherwise available, fails to state a cognizable claim of disability-based discrimination.  Id.

Plaintiff's testimony that he was unable to perform the essential functions of his position as an Educational Recruiting Representative from the day he was diagnosed with cancer, October 15, 2012, until at least the date of his deposition, December 18, 2013, conclusively establishes that he was not a qualified individual on the date of his discharge, October 30, 2012.  Consequently, plaintiff has failed to present evidence capable of establishing a prima facie case of discrimination based on disability, and plaintiff's claim that his discharge constituted disability discrimination in violation of the ADA and the TCHRA fails as a matter of law.  See Burch v. City of Nacagdoches, 174 F.3d 615, 621 (5th Cir. 1999) ("The ADA does not require an employer to relieve an employee of the essential functions of his or her job, modify those duties, reassign existing employees to

perform those jobs, or hire new employees to do so.")   See also
Gober v. Frankel Family Trust, 537 F. App'x 518, 521-22 (5th Cir.
2013) (affirming grant of summary judgment for employer in an ADA
case where evidence showed that plaintiff could not perform an
essential function of his job); Hammond v. Jacobs Field Services,
499 F. App'x 377, 382 (5th Cir. 2012) (same).

### (2)  Plaintiff Fails to Raise a Fact Issue on Either Pretext or Mixed-Motives Alternative.

ITT also argues that it is entitled to summary judgment on
plaintiff's ADA and TCHRA claims because plaintiff was discharged
as part of a nationwide RIF that occurred in the fall of 2012 as a
result of a quarterly census that required ITT to reduce staffing
at ninety-one campuses, including plaintiff's.[44]   Eliminating a
position for economic reasons during a RIF is a valid, non-
discriminatory reason for discharging an employee.   See Equal
Employment Opportunity Commission v. Texas Instruments Inc., 100
F.3d 1173, 1181 (5th Cir. 1996) (citing Walther v. Lone Star Gas
Co., 952 F.2d 119, 123 (5th Cir. 1992) ("Lone Star has offered a
valid, non-discriminatory explanation for Walther's discharge:  he
was part of a reduction in force in which employees were laid off
based on their performance records.")).   Accordingly, ITT has met
its burden to produce evidence of a legitimate, nondiscriminatory
reason for plaintiff's discharge.

---

[44]Defendant's Motion for Summary Judgment, Docket Entry No. 18,
p. 16.

In response to ITT's proffered legitimate, nondiscriminatory reason for his discharge, plaintiff argues only that the timing of his discharge — within fifteen days of notifying his supervisor, Lee, of his cancer diagnosis and need for treatment — is capable of raising a fact issue for trial.  Plaintiff argues:

> ITT refused to fire Derek Holloway ten days before he was diagnosed with prostate cancer, and fired him within fifteen days of learning that he had prostate cancer.  If Derek Holloway was a bad employee, why wasn't he fired on October 5, 2012, before ITT knew of his cancer diagnosis.[45]

Citing Baumeister v. AIG Global Investment Corp., 420 F. App'x 351, 356 (5th Cir. 2011), plaintiff argues that "[t]hese facts meet Plaintiff's burden that Defendant's stated reasons are pretext, and that a motivating factor in his termination was his disability."[46]

ITT argues that plaintiff was selected for inclusion in the RIF based on objective criteria of poor performance — not because of his cancer or need for cancer treatment.  In support of this argument ITT has presented undisputed evidence that the RIF was nationwide, that the decision to eliminate three positions in plaintiff's department was made before plaintiff notified Lee of his diagnosis and need for treatment, that the decision regarding which employees to eliminate was based on objective performance criteria that were made before plaintiff notified Lee of his diagnosis and need for treatment, and that plaintiff had the

---

[45]Plaintiff's Response, Docket Entry No. 28, p. 15.

[46]Id.

highest, i.e., worst, score of any of the employees at his campus
selected for inclusion in the RIF.  Plaintiff has failed to point
to any evidence that would permit a reasonable juror to find that
ITT's proffered reasons for discharging him were not true and were,
in fact, pretexts for discrimination based on disability.

Assuming the mixed-motives argument remains viable for an ADA
discrimination claim, plaintiff has failed to point to evidence
that would enable a reasonable jury to find that his disability was
a motivating factor in ITT's decision to include him in the Fall
2012 RIF.  To be a motivating factor discrimination "must actually
play a role in the employer's decision making process and have a
determinative influence on the outcome."  Pinkerton, 529 F.3d at
519.  Moreover, under a mixed-motive framework the employer can
defend against liability by showing that it would have taken the
same action in the absence of any alleged discriminatory animus.
Rachid, 376 F.3d at 312; Richardson, 434 F.3d at 333.  Here, the
undisputed evidence is that ITT's decisions to initiate the RIF, to
include four employees from plaintiff's campus, including three
from plaintiff's department, had been made by October 5, 2012 — ten
days before October 15, 2012, the date plaintiff notified Lee of
his cancer diagnosis and need for treatment.  Moreover, the
objective performance criteria that ITT used to identify the
individual employees to be included in the RIF were also
established before ITT was informed of plaintiff's diagnosis and
need for treatment.  Plaintiff's score of 13 — which undisputedly

placed him at the top of the list for discharge — was based on his 2012 PP&E score of three points received on June 5, 2012, plus an additional ten points for his having received a Final Written Warning on October 5, 2012.  Because plaintiff did not notify Lee or anyone else at ITT of his diagnosis and need for cancer treatment until October 15, 2012, neither his cancer nor his need for cancer treatment could have played a role or had a determinative influence on the outcome of ITT's decision to initiate the RIF or to include him in the RIF's implementation.

Plaintiff's reliance on Baumeister, 420 F. App'x at 356, is misplaced because in that case the Fifth Circuit held that temporal proximity between employee's pregnancy leave and her discharge alone was not sufficient to establish that the employer's legitimate, non-discriminatory reason for discharge — RIF — was a pretext for discrimination.  See Ameristar Airways, Inc. v. Administrative Review Board, U.S. Department of Labor, 650 F.3d 562, 569 n.21 (5th Cir. 2011) ("Although carrying significant weight, temporal proximity standing alone is not enough to sustain the plaintiff's ultimate burden.").  Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case.  But once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that discrimination was the real motive.  Rachid, 376 F.3d at 312;

Richardson, at 333.    Plaintiff has offered no such evidence.
Moreover, the court concludes that any inference of discrimination
arising from the temporal proximity of plaintiff's discharge to his
notifying ITT of his cancer diagnosis is overcome by the undisputed
evidence that plaintiff would have been discharged from his
position as an Educational Recruiting Representative during the RIF
that occurred in the fall of 2012 due to his history of poor
performance.    The court concludes therefore that plaintiff has
failed to raise a genuine issue of material fact for trial by
presenting evidence from which a reasonable fact-finder could
conclude that ITT's legitimate, nondiscriminatory reason for
including him in the Fall 2012 RIF is untrue or unworthy of
credence, or that ITT's decision to include him in the RIF was
otherwise motivated by discrimination based on disability.
Accordingly, ITT's motion for summary judgment on plaintiff's ADA
and TCHRA claims will be granted.

2.    Family and Medical Leave Act

Plaintiff alleges that ITT willfully discriminated against him
and interfered with his rights under the FMLA by discharging him
while he was on FMLA-covered leave. Plaintiff alleges that
"[f]iring an employee while on FMLA [leave] interferes with Derek
Holloway's right to be reinstated at the end of his FMLA leave,"[47]

---

[47]Plaintiff's First Amended Complaint, Docket Entry No. 12,
p. 4 ¶ 23.

and that "[f]iring an employee because he took an FMLA leave is prohibited by the FMLA."[48] ITT argues that it is entitled to summary judgment on plaintiff's FMLA claim because plaintiff cannot show that its legitimate, non-discriminatory reason for his discharge — inclusion in a nationwide RIF — was pretext for interfering with plaintiff's entitlement to FMLA leave. Alternatively, ITT argues that it is entitled to summary judgment on plaintiff's FMLA claim because plaintiff was not released for work when his FMLA leave period expired, and because when plaintiff was deposed on December 18, 2013, plaintiff was still not able to perform the essential functions of his job.[49]

      (a) Applicable Law

The FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons without risk of losing their employment. See 29 U.S.C. § 2601(b)(1) and (2).[50] The FMLA contains both prescriptive and proscriptive provisions which, together, seek both to accommodate the legitimate interests of employers and to meet the needs of employees and their families.

---

[48]Id. ¶ 24.

[49]Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 12.

[50]The FMLA applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). An employee who has worked for a covered employer for at least 1250 hours during the preceding twelve months is eligible for FMLA leave. 29 U.S.C. § 2611(2)(A). ITT does not dispute either that it is a covered employer or that plaintiff was eligible for FMLA leave.

See Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 763 (5th Cir. 2001).  Prescriptive provisions of the FMLA allow an eligible employee to take up to twelve weeks of unpaid leave to care for himself if the employee suffers from a serious health condition that makes the employee unable to perform the functions of his position.  Id. (citing 29 U.S.C. § 2612(a)(1)).[51]  At the conclusion of a qualified leave period the employee is entitled to reinstatement to his former position, or to an equivalent one, with the same terms and benefits.  29 U.S.C. § 2614(a).  Proscriptive provisions of the FMLA make it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a).

The FMLA provides a private right of action against employers who violate its provisions.  29 U.S.C. § 2617.  Plaintiff's claimed right to return to work after his qualified absence is a substantive right under the statute.  See 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a).  See Mauder v. Metropolitan Transit Authority of Harris County, Texas, 446 F.3d 574, 580 (5th Cir.

---

[51]29 U.S.C. § 2612(a)(1) provides in relevant part that

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

. . .

**(D)** Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

-30-

2006).  See also McArdle v. Dell Products, L.P., 293 F. App'x 331,

334 (5th Cir. 2008) ("An employer's failure to restore an employee

to the same or equivalent position gives rise to an entitlement

claim under 29 U.S.C. § 2615(a)(1)."); Nero v. Industrial Molding

Corp., 167 F.3d 921, 926-27 (5th Cir. 1999) (distinguishing claims

alleg-ing a failure to reinstate from claims alleging retaliatory

discharge following FMLA leave); Cuellar v. Keppel Amfels, L.L.C.,

731 F.3d 342, 348-51 (5th Cir. 2013) (Elrod, J., concurring)

(discussing substantive differences between FMLA claims based on

allegations of interference with entitlement to FMLA leave and

retaliation for having exercised FMLA rights).

Here, plaintiff states that his FMLA claim is not a

retaliation claim but, instead, a claim for interference with his

entitlement to FMLA leave.[52]

> To establish a prima facie interference case, [plaintiff]
> must show that (1) []he was an eligible employee,
> (2) [ITT] was an employer subject to the FMLA's
> requirements, (3) []he was entitled to leave, (4) []he
> gave proper notice of [his] intention to take FMLA leave,
> and (5) [ITT] denied [him] benefits to which []he was
> entitled under the FMLA.

Lanier v. University of Texas Southwestern Medical Center, 527

F. App'x 312, 316 (5th Cir. 2013) (citing Donald v. Sybra, Inc.,

667 F.3d 757, 761 (6th Cir. 2012)).  At issue is only the fifth

element:  whether ITT denied plaintiff benefits to which he was

entitled under the FMLA.

---

[52]See Plaintiff's Response, Docket Entry No. 28, p. 9.

The right to FMLA leave is not unlimited.  An employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B).  An employer who denies reinstatement bears the burden of showing "that an employee would not otherwise have been employed at the time reinstatement is requested."  29 C.F.R. § 825.216(a).  If an employer states a legitimate reason for not reinstating an employee following a period of FMLA leave, the employee must present evidence sufficient to raise a jury question that the employer's stated reason for not reinstating him was pretextual.  Shirley v. Precision Castparts Corp., 726 F.3d 675, 682-83 (5th Cir. 2013) ("[D]enying an employee the reinstatement to which he is entitled generally violates the FMLA, [but] denying reinstatement to an employee whose right to restored employment had already been extinguished — for legitimate reasons unrelated to his efforts to secure FMLA leave — does not violate the Act.").

(b)   Application of the Law to the Facts

Citing Nero, 167 F.3d at 927, plaintiff argues that ITT violated rights guaranteed by the FMLA when it discharged him while he was on FMLA leave and failed to reinstate him at the end of his 12-week leave period.  Plaintiff argues

> Derek Holloway was approved for FMLA leave, and he was on FMLA leave when he was terminated.  (Holloway affidavit).  He was entitled to twelve weeks of job protection, he

-32-

didn't get one week. (Holloway affidavit). He was
entitled to continued benefits for twelve weeks.
(Holloway affidavit). His benefits were cancelled after
one week when he was being treated for cancer. (Holloway
affidavit). ITT's only defense is that they now claim
that Derek Holloway lost his job due to a reduction in
force. (Lee 78/23). However, a reasonable jury could
not believe ITT. ITT refused to fire Derek Holloway
three weeks earlier, before it knew of his cancer
diagnosis and need for an FMLA leave. (Lee 75/10)
Steven Lee, the person who supplied the information that
led to Derek Holloway's termination, knew all about Derek
Holloway's cancer diagnosis and need to take an FMLA
leave when Seven Lee put together information to get him
terminated. (Lee 78/23). Fourteen other recruiters did
not lose their jobs. A jury could conclude that the
reason Derek Holloway lost his job and his benefits was
because he got sick and need[ed] to take an FMLA leave.
This creates a fact issue which precludes summary
judgment in this matter.[53]

The undisputed evidence establishes that plaintiff's discharge

in the nationwide RIF that ITT implemented in the fall of 2012 was

based solely on objective criteria, i.e., his most recent PP&E

score and points associated with the Final Written Warning that Lee

gave him on October 5, 2012. This evidence establishes that

plaintiff's most recent PP&E score of three points was established

on June 5, 2012, a date that was over four months before he applied

for FMLA leave on October 15, 2012. The undisputed evidence

establishes that the Final Written Warning that added ten points to

plaintiff's score was prepared and given to plaintiff on October 5,

2012, ten days before he applied for FMLA leave. The evidence also

establishes that plaintiff's combined score of 13 was higher than

---

[53]Id.

any other Educational Recruiting Representative at his campus, and that two other recruiters with better scores were also included in the RIF.  Moreover, plaintiff does not dispute that ITT's RIF scoring system was objective, that his score of 13 qualified him for discharge in the RIF, or that his score of 13 was established before he sought FMLA leave.  The undisputed evidence also establishes that plaintiff's FMLA leave expired in January of 2013, and that at that time plaintiff's physicians had not released him to return to work, and he was not capable of performing essential functions of his job as an Educational Recruitment Representative.

Nevertheless, quoting Nero, 167 F.3d at 927, plaintiff argues that "[t]he only question in such cases is 'whether the plaintiff has established by a preponderance of the evidence, that he is entitled to the benefit he claims.'"[54]  But for reasons explained in Shirley, 726 F.3d at 682-83, plaintiff's reliance on Nero is misplaced.  In Shirley the Fifth Circuit explained

> [t]hat an employee is not guaranteed an absolute right to reinstatement following a qualified absence is not only "a matter of common sense[,]" but also a principle reflected in this circuit's pattern jury instructions, and in the opinions of a significant majority of other circuit courts.

Id. at 682-83 & nn.31-34 (citing Fifth Circuit Pattern Jury Instructions (Civil) § 11.10.2(B)(8) (2009), and cases from the Third, Fourth, Sixth, Seventh, Eighth, and Eleventh Circuits

---

[54]Id. at 8-9.

-34-

(citations omitted)).  The Fifth Circuit explained that its opinion

in Nero, 167 F.3d at 921, is not to the contrary:

> There, having accepted that [29 U.S.C.] § 2614(a)(3)
> provides an employee only those rights to which he would
> have been entitled had he not taken leave, we noted that,
> because reinstatement was an FMLA *entitlement,* "the
> employee [was] due the benefit if the statutory
> requirements [were] satisfied, *regardless of the intent
> of the employer*." . . . A few district courts have
> interpreted the italicized phrase as imposing a strict
> liability standard, requiring employers, in all
> circumstances, to reinstate employees after returning
> from FMLA leave. . . . these courts misread Nero.

Shirley, 726 F.3d at 682 (citations omitted).

The Fifth Circuit explained that

> [i]t is true that an employer may not fail to reinstate
> an employee following his return from FMLA leave, *but
> only if the statutory requirements have been satisfied.*
> Among those requirements is one dictating that an
> employee must actually be entitled to the position to
> which he seeks reinstatement, 29 U.S.C. § 2614(a)(3); and
> an employer may challenge that entitlement by offering
> evidence that the employee would have lost his position
> even had he not taken FMLA leave, 29 C.F.R. § 825.216(a).
> Thus, although denying an employee the reinstatement to
> which he is entitled generally violates the FMLA, denying
> reinstatement to an employee whose right to restored
> employment had *already been extinguished* — for legitimate
> reasons unrelated to his efforts to secure FMLA leave —
> does not violate the Act.  Although we might have been
> clearer in Nero, we in fact considered the employer's
> reasons for terminating the employee, which, of course,
> would have been unnecessary had those reasons been
> irrelevant.

Id.

To avoid summary judgment in a case such as this where the

defendant employer states a legitimate cause for not reinstating an

employee following a period of FMLA leave, i.e., discharge during

a nationwide RIF and inability to perform essential functions of

-35-

his job, plaintiff must present evidence sufficient to raise a genuine issue of material fact for trial that ITT's stated reasons for failing to reinstate him are pretextual.  This plaintiff fails to do so.   Plaintiff has offered no evidence of pretext. Plaintiff's allegations and evidence are insufficient to survive summary judgment on his FMLA claim, as no reasonable jury could find that he was denied reinstatement for any reason other than ITT's stated reasons, i.e., shortly after he began is FMLA leave, plaintiff was discharged as part of a nationwide RIF, and when his FMLA leave expired his physicians had not released him to return to work, and according to his own testimony he was not capable of performing essential functions of his job as an Educational Recruitment Representative.  Accordingly, the court concludes that ITT is entitled to summary judgment on plaintiff's FMLA claim.

### III.  Conclusions and Order

For the reasons explained above in § I, Plaintiff's motion for entry of default judgment asserted in Docket Entry No. 28 is **DENIED**.

For the reasons explained above in § II, Defendant's Motion for Summary Judgment (Docket Entry No. 18) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 28th day of August, 2014.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-36-